**COVINGTON**

BEIJING   BRUSSELS   DUBAI   FRANKFURT   JOHANNESBURG
LONDON   LOS ANGELES   NEW YORK   PALO ALTO
SAN FRANCISCO   SEOUL   SHANGHAI   WASHINGTON

**Philip A. Irwin**

Covington & Burling LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
T +1 212 841 1190
pirwin@cov.com

**Via ECF**                                                                                     June 15, 2022

The Honorable Analisa Torres
United States District Judge
Daniel Patrick Moynihan Courthouse
500 Pearl Street
New York, NY 10007

Re:   *NRDC, Inc. v. DeJoy*, No. 22-cv-03442-AT-GWG

Dear Judge Torres:

I am writing on behalf of Oshkosh Defense, LLC ("Oshkosh"). Oshkosh plans to move to intervene in the above-captioned litigation pursuant to Federal Rule of Civil Procedure 24. In accordance with Section III(A) of Your Honor's Individual Practices, this pre-motion letter sets forth the bases of Oshkosh's anticipated motion to intervene.[1] Defendants consent to Oshkosh's intervention and Plaintiffs take no position at this time, but reserve the right to file a response.

Plaintiffs in this case challenge the U.S. Postal Service's ("USPS's") analysis conducted pursuant to the National Environmental Policy Act ("NEPA"), regarding the USPS Next Generation Delivery Vehicle ("NGDV") program. Oshkosh, a leading manufacturer of specialty vehicles and experienced government contractor, was awarded the contract to provide NGDVs under that program. Plaintiffs seek, among other relief, that the Court "[e]njoin the Postal Service from acquiring new delivery vehicles under the contract with Oshkosh until Defendants have demonstrated compliance with NEPA and applicable regulations." Compl. at 48. Oshkosh thus has a clear stake in the outcome of this litigation and seeks to intervene to protect its interests. Courts routinely grant intervention in NEPA cases to private parties that have contractual interests in the outcome of the litigation.

## Background

The NGDV program is a critical initiative that will replace much of the USPS's current fleet of outdated delivery vehicles "with new vehicles that have more energy-efficient

---

[1] With its motion, Oshkosh will file a declaration substantiating the background factual information discussed in this letter and a proposed Answer to Plaintiffs' Complaint.

powertrains, updated technology, reduced emissions, increased cargo capacity and improved loading characteristics, improved ergonomics and carrier safety, and reduced maintenance costs." USPS Final Environmental Impact Statement at ii (hereinafter "FEIS").[2]

The NGDV program involved a multi-year, competitive procurement process, which resulted in the February 23, 2021 award of the contract to Oshkosh to provide up to 165,000 NGDVs to the USPS. *See id.* at 1-3. Critically, under the contract, the USPS reserved its right to modify the quantity, type, or delivery timeline for NGDVs, or to terminate the contract entirely, depending on the outcome of the NEPA process. Following the contract award, the USPS began analyzing various options for the mix of vehicles to be ordered, and assessing "the existing environmental conditions and potential impacts of the proposed delivery vehicle replacement," as required by NEPA. FEIS at ii. This process culminated in the FEIS, published on January 7, 2022, after which, the USPS issued a February 23, 2022 Record of Decision, announcing its decision to purchase between 50,000 and 165,000 vehicles over a ten-year period. USPS Record of Decision at ii (hereinafter, "ROD").[3] The USPS noted that, while it "[h]as not yet determined the precise mix of [] powertrains" for these vehicles, at least 10% of the new vehicles will have battery-electric ("BEV") powertrains, while the remainder will have internal combustion engine ("ICE") powertrains. *Id.* On March 24, 2022, the USPS placed its first order with Oshkosh for 50,000 NGDVs, approximately 20% of which will be BEVs. Oshkosh anticipates that production of these NGDVs will begin in 2023, and the first NGDVs are expected to be delivered to the USPS in late 2023.

Before starting vehicle production, Oshkosh must complete preparatory steps, including production design, assembly tooling, and factory start-up. FEIS at 1-3. Oshkosh has selected a facility in South Carolina where it will manufacture NGDVs, and is building out its facility and installing equipment and tooling. Oshkosh is also performing engineering design work, vehicle testing, hiring employees, and identifying and placing orders with materials suppliers.

**I.       Oshkosh Is Entitled to Intervene as of Right Under Rule 24(a).**

To intervene as of right, an applicant must show that: (1) the application was timely made; (2) the applicant has "an interest in the action;" (3) "the interest may be impaired by the disposition of the action;" and (4) the interest is not adequately protected by the existing parties. *In re N.Y.C. Policing During Summer 2020 Demonstrations*, 27 F.4th 792, 799 (2d Cir. 2022).

***Oshkosh's Motion Is Timely***. Timeliness turns on four factors: "[1] the length of time the applicant knew or should have known of its interest before making the motion; [2] prejudice to existing parties resulting from the applicant's delay; [3] prejudice to the applicant if the motion is denied; and [4] the presence of unusual circumstances militating for or against a finding of timeliness." *Floyd v. City of New York*, 770 F.3d 1051, 1058 (2d Cir. 2014) (citation

---

[2] The FEIS is cited extensively in the Complaint and is available at https://tinyurl.com/3aaes5ks.

[3] Available at https://tinyurl.com/mraa5rbm.

omitted).[4]  Oshkosh's motion would be timely because this case is in an early stage of the proceedings, before the USPS has filed its answer to the Complaint.  *See, e.g.*, *E.E.O.C. v. Mavis Disc. Tire*, No. 12 Civ. 0741(KPF), 2013 WL 5434155, at *4 (S.D.N.Y. Sept. 30, 2013); *Am. Steamship Owners Mut. Prot. & Indem. Ass'n., Inc. v. Alcoa Steamship Co.*, No. 04Civ.4309-LAKFM, 2005 WL 427593, at *4 (S.D.N.Y. Feb. 22, 2005).  Indeed, the parties are not due to submit their joint proposed Case Management Plan and Scheduling Order until June 27, 2022.  *See* ECF No. 13.

  ***Oshkosh Has an Interest in this Action***.  Oshkosh has an interest in this action due to its contract with the USPS, which may be delayed, cancelled, modified, or executed as written, depending on the outcome of this action.  Courts in this circuit routinely authorize private parties to intervene in NEPA cases.  *See, e.g.*, *New York v. Salazar*, No. 6:08–CV–644 (LEK/GJD), 2009 WL 3165591, at *1 (N.D.N.Y. Sept. 29, 2009) (beneficiary of action permitted to intervene in NEPA litigation challenging the decision); *Nat. Res. Def. Council, Inc. v. U.S. Army Corps of Eng'rs*, 457 F. Supp. 2d 198, 202 n.2 (S.D.N.Y. 2006) (NEPA litigation noting that two companies had been permitted to intervene as defendants).  Further, this Court has routinely permitted parties to intervene in litigation directly affecting their contract rights.  *See, e.g.*, *Sherman v. Town of Chester*, 339 F. Supp. 3d 346, 360-61 (S.D.N.Y. 2018) (developer with contractual interest in land at issue in litigation had sufficient interest to intervene as of right); *New Eng. Petroleum Corp. v. Fed. Energy Admin.*, 71 F.R.D. 454, 457 (S.D.N.Y. 1976) (oil company intervened as of right in a suit that would directly affect the putative intervenor's duties and costs under the federal energy program at issue in the litigation).

  ***Oshkosh's Interest May Be Impaired***.  The impairment prong of Rule 24(a) "look[s] to the practical consequences of denying intervention."  *Nat. Res. Def. Council v. Costle*, 561 F.2d 904, 909 (D.C. Cir. 1977) (quotation omitted); Fed. R. Civ. P. 24 advisory committee's note to 1966 amendments ("If an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene.").

  If Plaintiffs succeed in vacating the final EIS and ROD or enjoining the USPS from acquiring new vehicles under the contract, Oshkosh's rights and expectations under the contract would be immediately impaired.  *See MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc.*, 471 F.3d 377, 386 (2d Cir. 2006) ("[B]ecause the absent non-party was a party to the contract at issue, its ability to protect its interest in that contract would have been seriously impaired if it were not made a party to the action.").  Oshkosh has already received its first NGDV order from the USPS for delivery in 2023—a timeline that likely would be jeopardized if, as Plaintiffs request, the USPS were enjoined "from acquiring new vehicles under the contract."  Compl. ¶ 14.  For example, if the USPS were required to redo the NEPA process, Oshkosh might be unable to begin NGDV production until after the NEPA process was completed.  That could result in delays for Oshkosh's preparation of its factory and hiring of employees, layoffs of existing employees, impairment of its relationships with contractors and suppliers, imposition of

---

[4] Notably, "[t]he Second Circuit does not require intervenors to establish independent Article III standing as long as there is an ongoing case or controversy between the existing parties to the litigation."  *See Windsor v. United States*, 797 F. Supp. 2d 320, 325 (S.D.N.Y. 2011).

June 15, 2022
Page 4

additional costs, and loss of revenue.  *See Conservation Law Found. of New Eng., Inc. v. Mosbacher*, 966 F.2d 39, 43 (1st Cir. 1992) (fishing group may intervene to defend lawsuit seeking to force government to change regulatory status quo, when "[c]hanges in the rules will affect the proposed intervenors' business, both immediately and in the future") (citation omitted).

Oshkosh could potentially suffer even more substantial impairment to its contractual interests.  If the USPS were required to re-open the NEPA review process and ultimately selected a different alternative, it might reduce the number of vehicles it purchases under the contract, alter the contract in some other fashion, or in a worst-case scenario, cancel it altogether.  Any such action would significantly and obviously harm Oshkosh.

***Oshkosh's Interests Will Not Be Adequately Protected by Existing Parties***.  An intervenor need only show that representation of its interest by an existing party "may be" inadequate.  *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538–39 & n.10 (1972).  The burden in meeting that test is "minimal."  *Id.* at 538 n.10.  Intervention should be permitted unless the intervenor's interests are "so similar" to those of an existing party "that adequacy of representation [is] assured."  *Brennan v. N.Y.C. Bd. of Educ.*, 260 F.3d 123, 132-33 (2d Cir. 2001).

As a government entity, the USPS is broadly charged with furthering the public interest and providing mail service.  *See* 39 U.S.C. § 101(a).  Thus, the USPS necessarily cannot adequately represent Oshkosh's differentiated commercial interests.  *See, e.g.*, *N.Y. Pub. Int. Rsch. Grp. v. Regents of Univ. of N.Y.*, 516 F.2d 350, 352 (2d Cir. 1975) (per curiam) (granting intervention because "there is a likelihood" that the intervenors "will make a more vigorous presentation of the economic side of the argument than would the" government defendants).

## II. In the Alternative, Oshkosh Qualifies for Permissive Intervention Under Rule 24(b).

Rule 24(b)(1) gives courts discretion to "permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact."  Rule 24(b) "is to be liberally construed."  *Yang v. Kellner*, No. 20 Civ. 3325 (AT), 2020 WL 2115412, at *1 (S.D.N.Y. May 3, 2020) (Torres, J.).  "The 'principal consideration'" for permissive intervention is "whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties."  *Id.*  (quoting *USPS v. Brennan*, 579 F.2d 188, 191 (2d Cir. 1978)).

The requirements for permissive intervention are satisfied here.  Oshkosh's and the USPS's defenses will involve common questions of fact and law—*e.g.*, the nature of the contract, the USPS's NEPA analysis, and NEPA's legal standards.  In addition, as shown above, Oshkosh has a substantial interest in the outcome of this litigation.  As a party to a contract that will be directly affected by the outcome of this action, Oshkosh's intervention would vindicate "a major premise of intervention—the protection of third parties affected by pending litigation." *Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 971 (3d Cir. 1998).  Finally, as noted, Oshkosh's motion is timely and there will be no prejudice or delay caused by Oshkosh's intervention.

For the foregoing reasons, Oshkosh seeks to move to intervene in this action.

June 15, 2022
Page 5

                                              Sincerely,

                                              *s/ Philip A. Irwin*

                                              Philip A. Irwin

cc:      Counsel of Record (via ECF)