Mayer Brown LLP
71 South Wacker Drive
Chicago, IL 60606
United States of America

**Timothy S. Bishop**

T: 312-701-7829
tbishop@mayerbrown.com

October 14, 2022

Hon. Analisa Torres
U.S. District Court, Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl St.
New York, NY 10007-1312

Re:   *Natural Resources Defense Council, Inc. v. DeJoy*, No. 22-cv-3442-AT

Dear Judge Torres:

I respectfully submit this letter setting forth the bases of defendants' anticipated motion to extend the stay in the above-captioned case until the U.S. Postal Service completes its supplemental environmental review of the Next Generation Delivery Vehicle (NGDV) Acquisitions program, which will result in the issuance of a new record of decision (ROD) to replace the challenged ROD. The Postal Service anticipates completing the review and issuing the new ROD by August 2023.

Defendants request the following briefing deadlines: defendants' motion and supporting memorandum due seven days after the Court grants this request; plaintiffs' opposition due fourteen days after the motion; and defendants' reply due seven days after the opposition.

This is defendants' second stay request. Defendants have submitted similar requests in the other actions challenging the NGDV Acquisitions program. Plaintiffs indicated that they reserve taking a position until after reviewing the motion.[*]

## BACKGROUND

Plaintiffs challenge the Postal Service's ROD implementing the NGDV Acquisitions program. *See* ECF No. 1. The ROD authorizes the purchase of 50,000 to 165,000 purpose-built vehicles to replace the Postal Service's aging delivery fleet. 87 Fed. Reg. 14,588, 14,589 (Mar. 15, 2022). Plaintiffs allege that the Postal Service's evaluation of potential environmental effects of the NGDV Acquisitions program was insufficient. ECF No. 1 ¶¶ 185-222.

Since the ROD was issued, the Postal Service announced substantial changes to its national operating model. In response to that development, the Postal Service proposed to "significantly modify" the NGDV Acquisitions program—including by increasing the percentage of purpose-built electric vehicles to *at least* 50% and potentially much greater. 87 Fed. Reg. 43,561, 43,561 (July 21, 2022). The Postal Service is also considering modifications due to Congress's recent $3 billion allocation for the Postal Service to purchase zero-emission delivery vehicles and supporting infrastructure. Inflation Reduction Act of 2022, Pub. L. No. 117-169, § 70002; Ex. 1 ¶ 7. The

---

[*]   The Postal Service also believes that the Court's ADR program could be useful in reaching agreement on a stay, and on achieving resolution of this lawsuit.

Mayer Brown is a global services provider comprising an association of legal practices that are separate entities including
Mayer Brown LLP (Illinois, USA), Mayer Brown International LLP (England), Mayer Brown (a Hong Kong partnership)
and Tauil & Chequer Advogados (a Brazilian partnership).

Postal Service is currently conducting the requisite environmental review of those changes. Ex. 1 ¶¶ 6, 8. It received 88,501 public comments on the proposal, including from plaintiffs, and anticipates completing the review and issuing a revised ROD by August 2023—well before October 2023, the earliest date when the Postal Service may receive any of the new vehicles at issue. Ex. 1 ¶¶ 5, 8, 12. The revised ROD will supersede the challenged ROD. Ex. 1 ¶ 13.

Meanwhile, this lawsuit has not proceeded far. The Postal Service has not filed the administrative record list, and no merits briefing has occurred. On August 11, the Court stayed proceedings due to the then-pending Judicial Panel on Multidistrict Litigation (JPML) motion to consolidate challenges to the ROD. ECF No. 48. On October 7, the JPML denied the motion. Ex. 2.

## ARGUMENT

A district court has inherent authority to stay judicial proceedings in order "to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). Where ongoing administrative proceedings bear on a case, judicial efficiency and fairness to the parties may favor a stay pending a resolution of the proceedings. *See, e.g.*, *Dependable Highway Express, Inc. v. Navigators Ins.*, 498 F.3d 1059, 1066 (9th Cir. 2007).

In determining whether to stay proceedings, this Court considers "(1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private interests of and burden on the defendants; (3) the interests of the courts; (4) the interests of persons not parties to the civil litigation; and (5) the public interest." *Loftus v. Signpost Inc.*, 464 F. Supp. 3d 524, 526 (S.D.N.Y. 2020). Those factors support a stay of this litigation until after the Postal Service issues the revised ROD.

***A stay will not prejudice Plaintiffs.*** No action that the Postal Service plans to take before the revised ROD is issued would result in any harm to plaintiffs or detract from their ability to fully litigate a challenge to the NGDV Acquisitions program.

NRDC alleges future injuries to several of its members based on "exposures to exhaust and noise from gas-powered delivery vehicles." ECF No. 1 ¶¶ 26-29. Those injuries cannot occur until the Postal Service obtains and uses "gas-powered" vehicles pursuant to the ROD. The Postal Service expects the revised ROD to supersede the challenged ROD—and the requested litigation stay therefore to end—well before it obtains and uses any new purpose-built delivery vehicles.

Courts routinely grant stays in such circumstances. *See, e.g.*, *WildEarth Guardians v. U.S. Army Corps of Engineers*, 2016 WL 9777189, at *4 (D.N.M. June 17, 2016); *NRDC v. Kempthorne*, 2015 WL 3750305, at *14 (E.D. Cal. June 15, 2015); *Sequoia Forestkeeper v. USFS*, 2008 WL 2131557, at *6 (E.D. Cal. May 21, 2008); *Common Sense Salmon Recovery v. Evans*, 329 F. Supp. 2d 96, 101 (D.D.C. 2004); *Greenpeace v. NMFS*, 80 F. Supp. 2d 1137, 1142 (W.D. Wash. 2000).

UAW's alleged injuries do not support constitutional and prudential standing, much less a prejudice showing. UAW asserts that the ROD harms its interest in vehicle production "at union shops." ECF No. 1 ¶ 35. To demonstrate prudential standing to pursue NEPA claims, a plaintiff "must show that its injury 'is to interests of the sort protected by NEPA.'" *Viasat, Inc. v. FCC*, 47 F.4th 769, 779 (D.C. Cir. 2022). The "zone of interests protected by the NEPA is . . . environmental; economic interests simply do not fall within that zone." *Gunpowder Riverkeeper*

*v. FERC*, 807 F.3d 267, 274 (D.C. Cir. 2015); *see Knowles v. U.S. Coast Guard*, 924 F. Supp. 593, 599 (S.D.N.Y. 1996). UAW's interest in union employment opportunities thus cannot support prudential standing to pursue its NEPA claims.

UAW also asserts that the ROD harms its interest in "mitigating climate change." ECF No. 1 ¶ 35. To establish organizational standing, UAW must show "an imminent injury in fact to itself as an organization . . . that is distinct and palpable." *Conn. Parents Union v. Russell-Tucker*, 8 F.4th 167, 172 (2d Cir. 2021). The challenged action must have "perceptibly impaired" the organization's activities, rather than "merely harm its 'abstract social interests.'" *Id.* at 173. "[E]xpend[ing] resources to oppose" agency action is insufficient; there must be "an involuntary material burden on [the organization's] established core activities." *Id.* Even accepting UAW's abstract interest in climate change, that interest cannot support the injury requirement of constitutional standing.

Neither can alleged injuries to UAW members support a prejudice showing. UAW claims that the ROD will harm members' "aesthetic and recreational interests" in "seeing union-built" vehicles. ECF No. 1 ¶ 35. UAW lacks standing to sue on members' behalf because it fails to "identify members who have suffered the requisite harm." *Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009); *cf.* ECF No. 1 ¶¶ 27-28 (identifying NRDC members). Furthermore, being deprived of seeing union-built vehicles is not an "environmental harm" within NEPA's zone of interest. *Gunpowder*, 807 F.3d at 274. NEPA protects the "aesthetic enjoyment of federal lands," *Lujan v. NWF*, 497 U.S. 871, 886 (1990), not enjoyment from viewing favored products. Even ignoring those deficiencies, UAW members' "aesthetic" harm would not occur until the Postal Service begins using the new vehicles—after the revised ROD is issued and the stay is dissolved.

Where, as here, pausing the litigation would not be "oppressive in its consequences," a stay "not immoderate in extent" is appropriate. *Landis*, 299 U.S. at 256. The ongoing agency proceedings involve a complex, technical review of the potential environmental effects of replacing a significant portion of the Postal Service's nationwide delivery fleet. Ex. 1 ¶¶ 9-11. The anticipated ten-month duration of a stay is reasonable in light of the complexity of the issues under review.

Plaintiffs are likely to argue that litigation should not be stayed because the manufacturer may continue working during that time. But the tasks being undertaken are largely necessary for producing either electric or gas vehicles. ECF No. 42 ¶¶ 13-16. Besides, the fact that preparatory work is proceeding is irrelevant to the prejudice inquiry. Plaintiffs' alleged harms are from gas vehicle emissions, but the Postal Service does not anticipate using *any* new vehicles until well after the revised ROD is finalized. As the JPML recognized, Plaintiffs may seek to amend their complaint to challenge the revised ROD, and will suffer no harm in the interim. Ex. 2 at 2.

***Continuing proceedings would cause hardship to the Postal Service and disserve the public.*** If proceedings are not stayed, the Postal Service would need to file the administrative record, defend against record motions, and brief summary judgment on the existing ROD—all while preparing the revised ROD. The same agency staff are responsible for completing that review and supporting the Postal Service in this case. Ex. 1 ¶ 14. Continuing proceedings thus will divert limited resources from completing the revised ROD to defending a ROD that will soon be replaced. Ex. 1 ¶¶ 13-14. The need to reroute resources from environmental review to litigation weighs in favor of a stay. *See, e.g.*, *WildEarth*, 2016 WL 9777189, at *4; *Kempthorne*, 2015 WL 3750305, at *8.

Continuing proceedings also would force the Postal Service to litigate many of "the same fundamental issues that are already being []considered" through the supplemental administrative

review. *S. Yuba River Citizens League v. NMFS*, 2013 WL 4094777, at *9 (E.D. Cal. Aug. 13, 2013). That review is assessing the impacts of substantial changes to the NGDV Acquisitions program from the redesign of the Postal Service's operating model and increased congressional funding for electric vehicles. The Postal Service will also evaluate comments, including from plaintiffs, regarding the revised ROD. The Postal Service should have the opportunity, through the administrative process, to address those concerns. *Azar v. Allina Health Servs.*, 139 S. Ct. 1804, 1816 (2019) ("Notice and comment . . . affords the agency a chance to avoid errors and make a more informed decision."). It should not be required "to duplicate efforts, and to argue points that may be resolved" through the administrative process. *Sequoia*, 2008 WL 2131557, at *5.

Continuing proceedings also would disserve the public. The Postal Service has a constitutional and statutory duty to deliver mail to 163 million addresses. U.S. Const. Art. I, § 8, cl. 7; 39 U.S.C. § 101. The NGDV Acquisitions program seeks to modernize the Postal Service's fleet—the largest civilian vehicle fleet in the world—to fulfill that mission. 87 Fed. Reg. at 14,589. Requiring the Postal Service to litigate a challenge to the existing ROD while conducting analysis necessary for the revised ROD will prolong its reliance on aging vehicles in need of replacement. *See* Ex. 1 ¶ 14.

***Judicial economy favors a stay.*** Where, as here, there are ongoing "separate [administrative] proceedings" that "bear upon the case," it "would waste judicial resources" to "determine the merits of the case" while that "parallel process" is underway. *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863 (9th Cir. 1979). Without a stay, the parties will be required to litigate, and the Court to adjudicate, many of the same issues that are already being considered by the Postal Service through the supplemental environmental review. The potential for the administrative process to "lead to a narrowing or elimination of at least some of the issues in dispute," *Oceana, Inc. v. Bryson*, 2012 WL 13060013, at *2 (D.D.C. Mar. 22, 2012), supports a stay, even if that process will not "necessarily [be] controlling" on every issue, *Leyva*, 593 F.2d at 864.

Plaintiffs' claims in this litigation concern many of the same issues that the Postal Service is evaluating through the supplemental environmental review. For instance, plaintiffs allege that the Postal Service failed to consider alternatives to purchasing a minimum of 10% electric purpose-built vehicles and did not sufficiently analyze impacts from vehicle emissions. ECF No. 1 ¶¶ 193-216. The express purpose of the supplemental review is to consider additional alternatives, including purchasing a minimum of 50% electric purpose-built vehicles. 87 Fed. Reg. at 43,561.

In addition, NRDC submitted comments about the supplemental review that recommend alternatives and seek additional emissions analysis. Ex. A to Ex. 1 at 3-4, 9 n.20, 12-13, 22-28. The Postal Service is currently evaluating those comments, and plaintiffs will have a second opportunity to submit comments, on a draft of the supplemental review. 87 Fed. Reg. at 43,562. The Postal Service's evaluation of the "issues asserted" by plaintiffs "during the public comment period" thus may resolve some of the claims before the Court. *Sequoia*, 2008 WL 2131557, at *5.

Crucially, the revised ROD will supersede the challenged ROD, mooting plaintiffs' claims. *See, e.g.*, *Theodore Roosevelt Conservation P'ship v. Salazar*, 661 F.3d 66, 79 (D.C. Cir. 2011); *Forest Guardians v. USFS*, 329 F.3d 1089, 1096 (9th Cir. 2003). The Postal Service expects to issue the revised ROD by August 2023, Ex. 1 ¶ 13, which may well occur before the resolution of summary judgment proceedings. Since the supplemental review will soon "moot the . . . environmental [analysis] that [is] currently the subject of plaintiffs' complaint," there is a risk that continuing proceedings may be rendered "an academic exercise." *Greenpeace*, 80 F. Supp. 2d at 1142.

For these reasons, the Court should extend the litigation stay until after the Postal Service completes the supplemental environmental review of the NGDV Acquisitions program and issues the revised ROD.

> Respectfully submitted,
>
> /s/ Timothy S. Bishop
> Timothy S. Bishop

Enclosures:

- Exhibit 1: Declaration of Jennifer Beiro-Réveillé

- Exhibit 2: Order, *In re U.S. Postal Service's NGDV Acquisitions Program*, MDL No. 3046 (J.P.M.L. October 7, 2022)