**NRDC**

October 21, 2022

**Via ECF and Email**
Honorable Analisa Torres
United States District Judge
Daniel Patrick Moynihan Courthouse
500 Pearl Street
New York, NY 10007

      Re:    Opposition to Extending Stay, ECF No. 49, *Natural Resources Defense Council and United Auto Workers v. Louis DeJoy et al.*, No. 22-cv-3442-AT

Dear Judge Torres:

      Plaintiffs Natural Resources Defense Council, Inc. (NRDC) and the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW) respectfully submit this letter opposing the request to extend the stay in this case, filed by Defendants Louis DeJoy and the U.S. Postal Service (collectively, USPS or Defendants).

      Additional delay would severely prejudice Plaintiffs and may limit the Court's ability to provide effective relief on the claims in the Complaint. Over two months ago, the Court granted a stay pending a decision by the Judicial Panel on Multidistrict Litigation (JPML). ECF No. 48. Two weeks ago, the JPML denied USPS's motion. Now, Defendants seek an indefinite stay based on an unenforceable timeline for a new environmental review, which will not revisit certain issues underlying claims in this case. Meanwhile, the challenged Record of Decision (ROD) remains in effect, locking in decisions about the mix of delivery vehicles and where and how the vehicles are made. The Court should lift the stay, deny USPS's request to file another stay motion, and order a case management conference to set a briefing schedule on motions for summary judgment.

## BACKGROUND

      The party "seeking a stay 'bears the burden of establishing its need.'" *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 97 (2d Cir. 2012) (quoting *Clinton v. Jones*, 520 U.S. 681, 708 (1997)). Courts decide whether to grant a stay by considering "(1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private interests of and burden on the defendants; (3) the interests of the courts; (4) the interests of persons not parties to the civil litigation; and (5) the public interest." *Morgan Art Found. Ltd. v. McKenzie*, No. 18-cv-4438-AT, 2019 WL 2725625, at *2 (S.D.N.Y. July 1, 2019) (quoting *Kappel v. Comfort*, 914 F. Supp. 1056, 1058 (S.D.N.Y. 1996)). The balance of "these factors is a case-by-case determination, with the basic goal being to avoid prejudice." *Id.* (quoting same). "The party moving for a stay must make out a clear case of hardship or inequity in being required to go forward." *Id.* (citation omitted).

      In February 2021, USPS contracted with Oshkosh Defense to produce up to 165,000 next generation delivery vehicles (NGDVs) and issued a $482 million task order to build out a new production facility. ECF No. 1, ¶¶ 90, 98-99. Roughly a year later, USPS belatedly completed its Environmental Impact Statement (EIS) and issued a ROD for its NGDV program. *Id.* ¶¶ 113, 162. USPS then issued a $2.98 billion purchase order for 50,000 vehicles. *Id.* ¶ 184. On June 10, 2022,

after being sued, USPS published a notice of intent to prepare a supplemental EIS (SEIS), 87 Fed. Reg. 35,581, and on July 21, 2022, a supplemental notice that extended the public comment period and reduced the scope to the 50,000 vehicles already purchased, 87 Fed. Reg. 43,561. At an August 8, 2022, public hearing, USPS explained that there was no change to its contract with Oshkosh to produce up to 165,000 vehicles. *See* USPS, SEIS Scoping Public Hearing, at 8:00, https://uspsngdveis.com/NGDV_SEIS_Scoping_Public_Hearing.mp4. USPS counsel has represented that vehicle production is set to begin in August 2023. USPS believes it can issue a draft SEIS in May and a final SEIS and new ROD in August 2023. ECF No. 49-1, ¶¶ 12-13.

## ARGUMENT

**Further delay would severely prejudice Plaintiffs.** Defendants argue that they have the flexibility to study different combinations of electric vehicles (EVs) and gas-powered vehicles, but the scope of the SEIS will be limited due to the preexisting contract with Oshkosh. Indeed, USPS has *already* made an irretrievable commitment to acquire 4,000 gas-powered vehicles, ECF No. 42, ¶ 18; USPS has only until March 2023 to modify the powertrains for the remaining 46,000 vehicles without facing delays, *id.*; contractors are actively tooling up a non-unionized South Carolina facility to produce these vehicles (in lieu of alternative unionized facilities), *id.* ¶ 16; and vehicle production is slated to begin in August 2023. These facts—which the SEIS will not change—are central to Plaintiffs' claims, and a stay would prejudice our ability to timely litigate those claims before these decisions become impossible to remedy. *See* ECF No. 1, ¶¶ 185-216.

NEPA requires that agencies take a "hard look" at environmental consequences *before* taking an action, and "consider such alternatives to the proposed action as may partially or completely meet the proposal's goal." *Friends of Animals v. Romero*, 948 F.3d 579, 585, 591 (2d Cir. 2020) (citations omitted). As required by USPS's NEPA regulations, the EIS "must" "[s]erve to assess the environmental impact of proposed actions, rather than to justify decisions already made." 39 C.F.R. § 775.11(b)(2)(vi). When an agency conducts NEPA review after making its decision, "it runs the risk 'that important effects will ... be overlooked or underestimated only to be discovered after ... the die [has been] cast.'" *Oglala Sioux Tribe v. NRC*, 896 F.3d 520, 532 (D.C. Cir. 2018) (citation omitted; alterations in original). Here, the die has been cast on certain decisions that will *not* change: USPS committed, by contract, to Oshkosh producing NGDVs at a new plant in South Carolina, committed to the first 4,000 vehicles being gas-powered, and has until March 2023—two months *before* USPS plans to release a draft SEIS, let alone a final decision—to change its work order for the first 50,000 vehicles without facing any delays, *see* ECF No. 42, ¶ 18; ECF No. 49-1, ¶ 12.

USPS ignores the real-world consequences of delay by making merits arguments about Plaintiffs' injuries. *See* ECF No. 49, at 2-3. Those arguments are more appropriately resolved at summary judgment, but it suffices for now to note the well-settled principle that plaintiffs satisfy Article III where, as here, they allege procedural injury from a deficient EIS, and concrete harm to aesthetic or other interests. *See, e.g.*, *Ouachita Watch League v. Jacobs*, 463 F.3d 1163, 1171 (11th Cir. 2006). It is beyond legitimate dispute that Plaintiffs have alleged procedural and other cognizable injuries, including harm from increased pollution in their communities compared to alternative ratios of EV to gas-powered vehicles. *See* ECF No. 1, ¶¶ 26-28, 32-35. Moreover, contrary to USPS's assertion, UAW need not identify members in the Complaint. *See, e.g.*, *Bldg.*

& *Constr. Trades Council of Buffalo v. Downtown Dev., Inc.*, 448 F.3d 138, 145 (2d Cir. 2006). Likewise, although Defendants correctly point out that a party alleging purely economic harm falls outside NEPA's zone of interests, courts have clarified that unions and associations have standing where they, as UAW has here, allege both socioeconomic *and* environmental harms. *See, e.g.*, *City of Rochester v. USPS*, 541 F.2d 967, 973-74 (2d Cir. 1976); *Lake Erie All. for Prot. of Coastal Corridor v. USACE*, 486 F. Supp. 707, 711-14 (W.D. Pa. 1980).

So long as the challenged ROD remains in place, USPS will be unable, as a practical matter, to examine the lawfully required full range of alternatives. Even as USPS purports to be exploring new options, its preexisting work orders that locked in 4,000 gas-powered vehicles make it literally impossible to consider a 100% or even 95% EV alternative for the vehicles covered by the SEIS, thereby foreclosing otherwise available options. And the single new alternative USPS announced plans to evaluate does not by itself satisfy the obligation to consider a reasonable *range* of alternatives. Nor will the SEIS analyze alternative sites for building NGDVs; yet, ongoing work at Oshkosh's South Carolina plant only increases the sunk costs in that facility.

The prejudice to Plaintiffs will be compounded in the highly likely event that USPS's SEIS process falls behind USPS's unrealistic schedule. By law, USPS must allow at least 45 days for comment on a draft SEIS and at least 30 days between publication of a final SEIS and issuance of a ROD. *See* 39 C.F.R. § 775.12. USPS will receive significant public comment on the SEIS—it received over 88,000 comments on its scoping document and expects a similar number on the draft SEIS. ECF No. 49-1, ¶ 11. To issue a draft SEIS in May and a ROD in August, as USPS suggests it will do, *id.* ¶¶ 12-13, would allow only a few weeks to analyze and respond to those comments. That timeline is not feasible; USPS needed *six months* between issuance of its August 2021 Draft EIS and its February 2022 ROD. Thus, delay will likely extend past the start of vehicle production, depriving Plaintiffs of any meaningful opportunity to challenge USPS's EIS and ROD.

Indeed, USPS's open-ended stay request places no enforceable time limit on the SEIS process; yet, the work that continues in the meantime is exacerbating the ongoing injuries Plaintiffs identified in the Complaint. Those reasons are enough to deny a stay. *See, e.g.*, *Alaska Wildlife All. v. Haaland*, 2022 WL 787989, at *4-5 (D. Alaska Mar. 15, 2022) (denying stay where agency had not revoked rule and timeline for revision was uncertain); *see also Colo. Env't Coal. v. Office of Legacy Mgmt.*, 819 F. Supp. 2d 1193, 1203-05 (D. Colo. 2011) (rejecting argument that ongoing environmental review mooted NEPA challenge). In contrast, USPS relies on cases that had time-limited stays pending a new NEPA review, did not involve activities plaintiffs objected to, or both. In *Sequoia Forestkeeper v. USFS*, the stay was limited to two months, the agency had "withdrawn" its NEPA document, and the court found it was "of SIGNIFICANCE … that during this brief stay, no ground-breaking will occur." 2008 WL 2131557, at *5-6 (E.D. Cal. May 21, 2008) (emphasis in original). In *WildEarth Guardians v. USACE*, "the portion of the project that [would] proceed during the requested stay [was] the segment to which Plaintiff [did] not object," and the proposed delay was "less than four months." 2016 WL 9777189, at *3, *6 (D.N.M. June 17, 2016). In *Greenpeace v. NMFS*, 80 F. Supp. 2d 1137 (W.D. Wash. 2000), the stay was limited to two months. *See* Docket No. 95, No. 98-cv-492 (W.D. Wash. Oct. 9, 1998). USPS's other examples— both Endangered Species Act cases—are similarly off point. In one, the agency had "conceded" the challenged Endangered Species Act listings were "flawed," *Common Sense Salmon Recovery v. Evans*, 329 F. Supp. 2d 96, 101 (D.D.C. 2004), and the other involved claims about an already

3

"invalidated" biological opinion, *NRDC v. Kempthorne*, 2015 WL 3750305, at *8 (E.D. Cal. June 15, 2015). But here, USPS made irretrievable commitments, Plaintiffs challenge the operative ROD authorizing that ongoing work, Defendants maintain their position the ROD complied with NEPA, and Defendants seek an indefinite stay *while that work continues*.

Judicial intervention may be the only way to remedy USPS's NEPA violations. The "risk implied by a violation of NEPA is that real environmental harm will occur through inadequate foresight and deliberation," and "the difficulty of stopping a bureaucratic steam roller, once started … [is] a perfectly proper factor for a district court to take into account" in assessing the harm from a NEPA violation. *Sierra Club v. Marsh*, 872 F.2d 497, 504 (1st Cir. 1989) (Breyer, J.). Here, further delaying litigation while extensive work occurs pursuant to an unlawful EIS and ROD—where the SEIS will not revisit key USPS decisions—would severely prejudice Plaintiffs.

**Burden on Defendants.** The purported burden on Defendants from proceeding to summary judgment is speculative. Two weeks before the stay was ordered, on July 27, 2022, USPS estimated that it only needed a month to produce the index for the administrative record, *see* ECF No. 43; thus, most of that work should now be completed. USPS argues that employees working on the SEIS may need to assist with review of scientific and technical issues in summary judgment briefing or on hypothetical motions regarding the record, but USPS does not estimate that time commitment or explain how it will slow the SEIS process. ECF No. 49-1, ¶ 14. Any "burden" on USPS is self-imposed; USPS refused to withdraw its ROD or to revisit in the SEIS matters at the heart of this case—i.e., decisions already made in the ROD and existing task orders.

**Interests of the Court.** The Court could set a prompt briefing schedule for summary judgment and resolve the case well before August 2023—USPS's projected, albeit unrealistic, date for a new ROD. The new ROD is therefore unlikely to "soon" moot this case, as USPS suggests. ECF No. 49, at 4. Nor will the SEIS or new ROD "supersede" the EIS and ROD (and moot this case), *id.*, because the SEIS will not address many issues in the Complaint, such as USPS's decisions to acquire certain amounts of gas-powered vehicles or to contract with a non-unionized facility in South Carolina, which will have far-reaching environmental and socioeconomic consequences. Furthermore, if the Court stays the case, Plaintiffs may need to seek expedited relief before vehicle production begins; thus, a stay may needlessly burden the Court and the parties.

**The public interest.** Congress recently provided $3 billion to USPS for EVs and EV infrastructure, which demonstrates the paramount public interest in electrifying the postal delivery vehicle fleet. *See* ECF No. 49. Moreover, "[t]here is no question that the public has an interest in having Congress'[s] mandates in NEPA carried out accurately and completely [before action is taken]." *Brady Campaign to Prevent Gun Violence v. Salazar*, 612 F. Supp. 2d 1, 26 (D.D.C. 2009). Hence, a stay would subvert the public interest by allowing harmful actions to proceed before the Court can evaluate and resolve Plaintiffs' claims that decisions already made by USPS (which will not be revisited) violate NEPA, thereby likely foreclosing consideration of USPS producing NGDVs with different percentages of EVs or at different facilities.

USPS has not met its burden of establishing the need for a stay. Accordingly, the Court should deny USPS's request to file a stay motion. Instead, Plaintiffs respectfully request that the Court order a case management conference so this case may proceed.

NRDC

Respectfully Submitted,

 /s/Francis W. Sturges, Jr.
FRANCIS W. STURGES, JR.
Appearing *Pro Hac Vice*
Natural Resources Defense Council
20 N. Wacker Dr., Suite 1600
Chicago, IL 60606
Tel: (312) 847-6807
Email: fsturges@nrdc.org

THOMAS ZIMPLEMAN
Appearing *Pro Hac Vice*
Natural Resources Defense Council
1152 15th Street NW, Suite 300
Washington, DC 20005
Tel: (202) 513-6244
Email: tzimpleman@nrdc.org

KATHERINE DESORMEAU
Appearing *Pro Hac Vice*
Natural Resources Defense Council
111 Sutter Street, 21st Floor
San Francisco, CA 94104
Tel: (415) 875-6158
Email: kdesormeau@nrdc.org

*Counsel for NRDC*

 /s/William S. Eubanks II (by permission)
WILLIAM S. EUBANKS II
Appearing *Pro Hac Vice*
Eubanks & Associates, PLLC
1629 K Street NW, Suite 300
Washington, DC 20006
Tel: (970) 703-6060
Email: bill@eubankslegal.com

*Counsel for UAW*

5